Hawkins v. BDC 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00372-CV







Belize Development Corporation/Dan Hawkins, Appellants



v.



Dan Hawkins/Ronald B. Zent; Joe R. Long; British American Cattle Company;

Caribbean Shores Ltd., Inc.; and Belize Development Corporation, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 94-05735, HONORABLE JOE HART, JUDGE PRESIDING








 Appellant Dan Hawkins ("Hawkins") filed suit against appellees, Belize
Development Corporation ("Belize Development"), British American Cattle Company (the "Cattle
Company"), Caribbean Shores Ltd., Inc. ("Caribbean Shores"), Joe R. Long ("Long"), and
Ronald B. Zent ("Zent"), alleging beach of contract and fraud claims. The cause was tried to the
court. The court rendered judgment against Hawkins on his fraud and sales commission contract
claims. The court rendered judgment in favor of Hawkins and against Belize Development on his
breach of real estate contract claim. The court rendered judgment that Hawkins take nothing
against the remaining appellees. Hawkins appeals from the final judgment below. Belize
Development raises cross-points of error. We will affirm the trial court's judgment in part and
reverse and render in part.



BACKGROUND 


 The Cattle Company, a Texas Business Corporation, and Caribbean Shores, a
Belize Corporation, are companies which owned and developed land in the nation of Belize. The
Cattle Company is solely owned by Long, while Caribbean Shores is owned by the Cattle
Company and Long. Belize Development is a Cayman Islands Corporation which, soon after its
creation in 1993, purchased all of the Cattle Company and Caribbean Shores' unsold Belizian land
holdings. (1) Zent is the president and sole operations officer of all three companies.

 Belize Development scheduled an auction to sell Belizian property in three cities
during July 9-10, 1993. The auction sites were Houston; Blaine, Washington; (2) and Taipei,
Taiwan. Hawkins had worked as a sales agent for the Cattle Company and Caribbean Shores in
the past selling land parcels in Belize. In June 1993, Hawkins contracted with Belize
Development to be its sales representative at the upcoming auction. The written contract provided
for Hawkins to use his "best efforts" in representing Belize Development at the auction to "assist
in the organization and employment of staff to promote the auction, and assist as needed in other
administrative capacities of establishing and promoting the auction." At trial, Hawkins testified
that his duty was to represent Belize Development at the Blaine auction site, inform bidders about
the properties to be auctioned, accept bidders' registrations and the deposits of successful bidders,
and sign receipts. As compensation, Belize Development was to pay Hawkins 2% of the gross
revenue at the Blaine auction site and 1/4% of the gross revenue at the remaining two sites with
a minimum guaranteed $2,500 commission.

 Without Belize Development's knowledge or consent, Hawkins registered himself
at the Blaine site as a bidder on the afternoon of the first day and began openly bidding against
other buyers for land parcels. Hawkins was the successful bidder on a number of the properties. 
He planned to establish a new company, Adventure Coast Properties, to resell the land he had
purchased. When Zent learned that Hawkins had bid at the auction, he refused to close Hawkins'
auction purchases. However, after a series of negotiations, Belize Development offered to sell
Hawkins twenty-three parcels of land in the Northern Lagoon, Estevez Works, and Sittee Point
Subdivisions for cash. Hawkins offered to pay cash for the Northern Lagoon and Estevez Works
tracts by applying sales commissions that were owing to him. However, Hawkins wanted credit
terms on the Sittee Point tracts because Belize Development had trouble delivering title due to
delays in subdivision plat approvals. Belize Development refused to give Hawkins credit terms,
insisting that he pay cash for all the tracts at one closing.

 Belize Development prepared written contracts, dated October 27, 1993, for the
sale of the properties requiring Hawkins to pay cash in full for all the parcels. Both Hawkins and
Zent signed the contracts. The contracts contained the following "Special Provision":



It is understood and agreed that after a final accounting of commissions due Mr.
Daniel L. Hawkins on existing commission agreements against purchase price, all
balances will be settled with a cash payment either by SELLER or PURCHASER
(Mr. Daniel H. Hawkins, d/b/a/ Adventure Coast Properties). Final Accounting
and settlement to occur by February 1, 1994.



Moreover, the contracts provided that Belize Development would deliver deeds to Hawkins only
when he paid the cash price in full, as well as all the necessary taxes and road and deed-recording
fees.

 Belize Development forwarded the contracts to First State Bank, its escrow agent,
with instructions that the contracts not be released to Hawkins until he paid the outstanding
balance due on the sales price. Hawkins never paid the balance due nor the taxes and fees. 
Consequently, the contracts were never released from escrow.

 Hawkins filed suit against Belize Development, the Cattle Company, Caribbean
Shores, Long, and Zent, alleging breach of the auction commission contract, breach of the real
estate contract, common law fraud, and fraud in real estate transactions. Hawkins also alleged
that Belize Development was a sham corporation, seeking to "pierce its corporate veil" and hold
the remaining defendants liable. The defendants responded in part that Hawkins' claims were
barred by the breach of his fiduciary duty when he bid at the auction seeking to acquire Belize
Development's assets, thereby betraying his principal.

 The cause was tried to the court which issued findings of fact and conclusions of
law. The trial court found that Hawkins and Belize Development were parties to binding real
estate contracts on the Northern Lagoon, Estevez Works, and Sittee Point parcels as evidenced
by the October 27, 1993 contracts. The court found that Belize Development breached these
contracts, entitling Hawkins to $50,000. The court failed to find that the evidence supported
Hawkins' fraud claims or proved that Belize Development was a sham corporation. Accordingly,
the trial court rendered judgment that Hawkins take nothing on his fraud claims, but awarded him
$50,000 on the breach of contract claim and $20,000 in attorney's fees as against Belize
Development only. The court further rendered judgment that Hawkins take nothing against the
remaining parties. Moreover, all relief not expressly granted was denied. The judgment did not
specifically state that the $50,000 breach of contract award referred to the real estate contracts as
opposed to the sales commission contract. However, read in conjunction with the findings of fact,
the judgment impliedly did so. Therefore, the trial court denied Hawkins' breach of sales
commission contract claim. Hawkins appeals the judgment, alleging that he should have prevailed
on the sales commission contract claims, that the court should have awarded more damages on the
real estate contract claims, and that Belize Development is indeed a sham corporation, therefore
entitling him to pierce the corporate veil. Belize Development raises cross-points of error,
challenging the award on the real estate contract claim, as well as attorney's fees.



DISCUSSION


 In his first point of error, Hawkins alleges that the trial court erred in denying his
breach of sales commission contract claim. The trial court did not specifically find that Hawkins
had breached his fiduciary duty by bidding at the auction. However, because the trial court
denied relief on this claim, Hawkins contends that the trial court must have implicitly so found. (3) 
Hawkins urges that there was no evidence demonstrating that he breached any fiduciary duty, and
that therefore he was entitled to recover the commissions from the auction sales.

 Whether an agency relationship exists is a question of fact unless the evidence
establishes the relationship as a matter of law. Bhalli v. Methodist Hosp., 896 S.W.2d 207, 210
(Tex. App.--Houston [1st. Dist.] 1995, writ denied). In deciding a no-evidence point of error, we
must consider only the evidence and inferences tending to support the finding of the trier of fact
and disregard all the evidence and inferences to the contrary. Burroughs Wellcome Co. v. Crye,
907 S.W.2d 497, 499 (Tex. 1995); Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex.
1990). We will uphold a finding if more than a scintilla of evidence supports it. Crye, 907
S.W.2d at 499; Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d 752, 755 (Tex. 1970); In re
King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). The evidence supporting a finding amounts to
more than a scintilla if reasonable minds could differ in their conclusions. Crye, 907 S.W.2d at
499; Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994). See generally William
Powers Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex.
L. Rev. 515, 523 (1991); Michol O'Connor, Appealing Jury Findings, 12 Hous. L. Rev. 65, 78-80 (1974). However, evidence susceptible of two opposite inferences is no more than a scintilla
of evidence and cannot support a judgment. Tubelite, a Division of Indal, Inc. v. Risica & Sons,
Inc., 819 S.W.2d 801, 805 (Tex. 1991); Litton Indus. Prods., Inc. v. Gammage, 668 S.W.2d
319, 324 (Tex. 1984).

 An agent owes its principal the fiduciary duties of good faith and undivided loyalty. 
See State v. Durham, 860 S.W.2d 63, 66 (Tex. 1993) ("[A]n agent charged with selling an asset
for the owner owes a fiduciary duty to the owner, and that agent violates this duty by acquiring
the asset for his own benefit."). Even a special agent, one with limited powers, owes the principal
the fiduciary duty of good faith and loyalty. See Hartford Cas. Ins. Co. v. Walker County
Agency, Inc., 808 S.W.2d 681, 687 (Tex. App.--Corpus Christi 1991, no writ) ("Inherent in any
agency relationship is the fiduciary duty owed by the agent to his principal.") (emphasis added);
Trippett v. Nash McLarty Motor Co., 269 S.W. 205, 207 (Tex. Civ. App.--Waco 1925, no writ)
(agent, whether general or special, owes principal fiduciary duty); see also Barnsdall Oil Co. v.
Willis, 152 F.2d 824, 828 (5th. Cir. 1946) (interpreting Texas law). The critical inquiry is not
the detriment to the principal, but rather the self interest of the agent. Burleson v. Earnest, 153
S.W.2d 869, 874 (Tex. Civ. App.--Amarillo 1941, writ ref'd w.o.m.).

 In the instant cause, the evidence reveals that Hawkins was responsible for
administering the sale of Belize Development's property. Hawkins openly bid on the property. 
His bidding at the auction tended to raise the prices, thereby raising his commission. In addition,
Belize Development received complaints about Hawkins' conduct from other bidders. In fact, one
bidder referred to Hawkins' conduct as a ground for rescinding his purchase. We conclude that
there was some evidence that Hawkins breached his fiduciary duty to Belize Development. 
Therefore, the trial court did not err in refusing to award him the fees and commissions arising
from the subject of the agency, i.e., the auction. See Russel v. Truitt, 554 S.W.2d 948, 955 (Tex.
Civ. App.--Fort Worth 1977, writ ref'd n.r.e.) (forfeiture of agency fees is proper when agent
breaches fiduciary duty); Anderson v. Griffith, 501 S.W.2d 695, 702 (Tex. Civ. App.--Fort Worth
1973, ref'd n.r.e.); Moore v. Kelley, 162 S.W. 1034, 1037 (Tex. Civ. App.--Amarillo 1914, writ
ref'd) (agent who breached fiduciary duty to principal forfeited right to compensation for
services). We overrule Hawkins' first point of error.

 In his second point of error, Hawkins contends that the trial court erred in failing
to find that Belize Development had later ratified the real estate contracts made at the auction and
according to the auction terms.

 Whenever an agent contracts to acquire its principal's property without the
principal's knowledge or consent, the contract becomes voidable at the principal's option. Ramsey
v. Gordon, 567 S.W.2d 868, 871 (Tex. Civ. App.--Waco 1978, writ ref'd n.r.e.). The principal,
however, may opt to ratify the transaction once it has full knowledge of the agent's action. Land
Title Co. v. Stigler, 609 S.W.2d 754, 756 (Tex. 1980). To ratify a contract the principal must
assent to the same terms of the original contract. See Kunkel v. Kunkel, 515 S.W.2d 941, 948
(Tex. Civ. App.--Amarillo 1974, writ ref'd n.r.e.); Curington v. Parks, 158 S.W.2d 839, 841
(Tex. Civ. App.--Dallas 1942, no writ); see also Brazell Bros. Contractors v. Hill, 138 S.E.2d
835, 837 (S.C. 1964) ("To ratify is to sanction or affirm, to give validity to something done by
another, not to contract anew or upon different terms.") (emphasis added); 2A C.J.S. Agency § 64
(1972).

 In the instant cause, when Hawkins told Zent, the president and sole operations
officer of Belize Development, that he had purchased lots at the auction, Zent told him that Belize
Development would not honor the sale. Furthermore, the auction terms allowed buyers to buy
lots on credit. The final real estate sales agreement, as evidenced by the October 27, 1993
contracts, required Hawkins to pay cash. Therefore, the terms of the final real estate sales
agreement differed from the sale terms under the auction's provisions. Accordingly, the record
contains evidence demonstrating that Belize Development did not ratify Hawkins' real estate
purchases according to the terms of the auction's provisions. Therefore, the court did not err in
failing to find that Belize Development ratified the auction sales contracts. We overrule Hawkins'
second point of error.

 In Belize Development's cross-point of error four, it challenges the trial court's
finding of damages. More specifically, Belize Development argues, without conceding, that even
if Hawkins is entitled to damages on the real estate contracts, he is entitled only to the purchase
price which has been refunded.

 When a purchaser contracts to buy land from one who cannot convey good title,
in the absence of fraud, the purchaser may not recover benefit of the bargain damages. Instead,
the purchaser may only recover the purchase price. See Garcia v. Yzaguirre, 213 S.W. 236, 242
(Tex. Comm'n App. 1919, judgm't. adopted) ("[I]t seems to be the well settled law in this state
that a vendee who contracts to purchase land from one who has no title can, in the absence of
fraud, recover only the amount paid on the contract, if any, and such special damages, not
including the loss of the bargain, as he may allege and prove.") (emphasis added); Long v. Brown,
593 S.W.2d 371, 372 (Tex. App.--Dallas 1979, writ ref'd n.r.e.) (seller's inability to convey good
title entitles buyer only to purchase price); see also Nelson v. Jenkins, 214 S.W.2d 140, 143 (Tex.
Civ. App.--El Paso 1948, writ ref'd); Texas Military Inst. v. Sun Oil Co., 112 S.W.2d 329, 332
(Tex. Civ. App.--Galveston 1937, writ dism'd); 63 Tex. Jur. 3d Real Estate Sales § 655 (1988).

 In the instant cause, the trial court failed to find that Belize Development defrauded
Hawkins in connection with the real estate contracts. Because Hawkins did not carry his burden
to prove fraud and has not challenged this factual finding on appeal, it is binding. See Wilson v.
Texas Parks & Wildlife Dep't, 853 S.W.2d 825, 832 (Tex. App.--Austin 1993), rev'd on other
grounds, 886 S.W.2d 259 (1994) (unchallenged factual findings binding on appeal). Therefore,
in the absence of fraud, the trial court's judgment awarding benefit of the bargain damages can
only stand if Belize Development was unwilling, as opposed to unable, to convey good title to the
properties in question.

 The trial court's findings are silent as to whether Belize Development was unable
or unwilling to convey good title to the properties. Therefore, in order to support the judgment,
there must be a deemed finding. In a bench trial, where the parties request, and the court files,
findings of fact, an unrequested, omitted finding can only be presumed when (1) an element of
the ground of recovery was included in the findings of fact; (2) the omitted element has not been
properly requested; and (2) the omitted finding is supported by the evidence. Tex. R. Civ. P.
299; Tarrant County Water Control v. Haunt, 854 S.W.2d 909, 913 (Tex. 1993); Linder v. Hill,
691 S.W.2d 590, 592 (Tex. 1985); 30 Jeremy C. Wicker, Civil Trial & Appellate Procedure
(Texas Practice 1985 & Supp. 1992). The trial court found that Hawkins and Belize Development
were parties to real estate contracts which Hawkins breached. Therefore, the trial court made
findings on at least one element of the breach of contract theory of recovery. Furthermore, the
parties did not request a finding on whether Belize Development was unwilling or unable to
convey title. As such, in order to presume an omitted finding that Belize Development was
unwilling, and not unable, to convey title, the record evidence must support such a finding. Tex.
R. Civ. P. 299.

 A search of the record reveals no evidence that Belize Development failed to
deliver title because it was unwilling, yet able, to do so. On the contrary, the evidence suggests
that Belize Development was unable to convey title due to various government regulations. In
negotiating the terms of the real estate contracts, Hawkins did not want to pay cash for the parcels
in the Sittee Points Subdivision because he believed that Belize Development could not convey
good title to those lots. Moreover, Belize Development's inability to convey title extended to the
properties in the remaining subdivisions as well. According to the record, Hawkins acknowledged
in correspondence to Zent that:



Your responsibility is to deliver to me deeds or transfers of certificate of title on
the properties that I have purchased . . . . It is my information that you cannot
deliver these deeds in recordable form . . . . You have performed none of your
obligations under these contracts and I suspect that you cannot perform.



(emphasis added). In another correspondence with Zent, Hawkins wrote:



[The lawyers] can make application for the license necessary for me or Adventure
Coast Properties, Ltd. to take title to the Northern Lagoon and Estevez Properties,
but can give no assurance of their issuance . . . .


 

 Furthermore, Hawkins concedes in his appellate brief that Belize Development is
unable to deliver title to the properties in dispute: "Hawkins has never received deed to any land
from Belize Development, which cannot to this day, deliver title to any properties for which
Hawkins contracted." (emphasis added). See Tex. R. App. P. 74(f) ("Any statement of fact made
by appellant in his original brief as to the facts or the record may be accepted by the [appellate]
court as correct unless challenged by the opposing party."). According to Hawkins' own
admissions, Belize Development was unable to convey title to the properties in dispute. Because
the evidence does not support such a finding, there can be no deemed finding that Belize
Development was unwilling, rather than unable, to convey title to the properties in dispute. Tex.
R. Civ. P. 299. Therefore, Hawkins was not entitled to recover benefit of the bargain damages. 
He was entitled to recover, at most, his purchase price which was refunded. We sustain Belize
Development's fourth cross-point of error.

 In Belize Development's cross-point of error six, it challenges the trial court's
award of attorney's fees. The trial court awarded Hawkins attorney's fees premised on his
successful contract claim. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West Supp. 1996)
(attorney's fees recoverable upon successful contract claim). In Hawkins' point of error five, he
contends that the trial court abused its discretion in conditioning appellate attorney's fees upon
Belize Development's appeal. Because we hold that Hawkins is not entitled to recover on his
contract claim, we reverse the award of attorney's fees as well. We sustain Belize Development's
sixth cross-point of error and overrule Hawkins' fifth point of error.

 In Belize Development's remaining cross-points of error and in Hawkins' fourth
point of error, each challenges certain aspects of the judgment awarding Hawkins benefit of the
bargain losses on the real estate contracts. Because we reverse the judgment's award of benefit
of the bargain damages, we need not consider these points of error.

 In Hawkins' third point of error, he urges that Belize Development was a sham
corporation whose corporate veil should be pierced. See Mancorp, Inc. v. Culpepper, 802
S.W.2d 226, 228 (Tex. 1990). The trial court found that none of the appellee corporations was
used to perpetrate fraud. Hawkins argues that such a finding is against the overwhelming weight
of the evidence. Notably, with this point of error Hawkins does not challenge the trial court's
negative finding concerning whether Belize Development perpetrated fraud in relation to the
October 27, 1993 real estate contracts. Instead, Hawkins argues that Belize Development's
corporate veil should be pierced because it was a sham corporation.

 An attempt to pierce the corporate veil is not an independent cause of action. 
Rather, it is a means of imposing liability based on an underlying cause of action on entities other
than the "sham" corporation. Gallagher v. Bintliff, 740 S.W.2d 118, 119 (Tex. App.--Austin
1987, writ denied). In the instant cause, we have already determined that Hawkins is not entitled
to any damages. Therefore, whether Belize Development's corporate veil can be pierced is
irrelevant. We overrule Hawkins' third point of error.



CONCLUSION


 We hold that the record contains no evidence to support a deemed finding that
Belize Development was able, yet unwilling, to convey good title to Hawkins on the properties
subject to the October 27, 1993 real estate contracts. Therefore, we reverse the trial court
judgment's award for breach of contract damages. Because we reverse the award of breach of
contract damages, we must also reverse the award of attorney's fees and render judgment that
appellant take nothing. The remainder of the judgment is affirmed.



 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed in Part; Reversed and Rendered in Part

Filed: July 17, 1996 

Do Not Publish 

1.   These holdings consisted of parcels in the Estevez Works, Northern Lagoon,
Revenge Lagoon, and Sittee Point Subdivisions.
2.   Belize Development had originally intended to hold the auction in Vancouver,
British Columbia. Due to permit problems with the Canadian government, the site was
moved to Blaine, Washington.
3.   While not part of the judgment or of the findings of fact, the appellate record
contains a letter from the court to the parties relating that the court found that Hawkins
breached his fiduciary duty by bidding at the auctions.